# IN THE UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RONALD COUTURE, | No. 2:11-CV-2778-CMK |
| Plaintiff, | |
| vs. | MEMORANDUM OPINION AND ORDER |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |
| _____ / | |

Plaintiff, who is proceeding with retained counsel, brings this action under 42 U.S.C. § 405(g) for judicial review of a final decision of the Commissioner of Social Security. Pursuant to the written consent of all parties, this case is before the undersigned as the presiding judge for all purposes, including entry of final judgment. See 28 U.S.C. § 636(c). Pending before the court are plaintiff's motion for summary judgment (Doc. 20) and defendant's cross-motion for summary judgment (Doc. 21).

/ / /

/ / /

/ / /

# I.  PROCEDURAL HISTORY

Plaintiff applied for social security benefits on June 12, 2009.  In the application, plaintiff claims that disability began on July 1, 2005.  Plaintiff claims that disability is caused by a combination of degenerative disc disease of the cervical and lumbar spine, degenerative joint disease in the knees, bilateral carpal tunnel syndrome, major depression, and morbid obesity.  Plaintiff's claim was initially denied.  Following denial of reconsideration, plaintiff requested an administrative hearing, which was held on December 1, 2010, before Administrative Law Judge ("ALJ") Jean R. Kerins.  In a January 26, 2011, decision, the ALJ concluded that plaintiff is not disabled based on the following relevant findings:

1. The claimant has the following severe impairment(s): poly-substance dependence in early remission, depression, and obesity;

2. The claimant does not have an impairment or combination of impairments that meets or medically equals an impairment listed in the regulations;

3. The claimant has the following residual functional capacity: full range of medium work;

4. Considering the claimant's age, education, work experience, residual functional capacity, and the Medical-Vocational Guidelines, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

After the Appeals Council declined review on August 31, 2011, this appeal followed.

# II.  STANDARD OF REVIEW

The court reviews the Commissioner's final decision to determine whether it is: (1) based on proper legal standards; and (2) supported by substantial evidence in the record as a whole.  See Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999).  "Substantial evidence" is more than a mere scintilla, but less than a preponderance.  See Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996).  It is ". . . such evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 402 (1971).  The record as a whole, including both the evidence that supports and detracts from the Commissioner's conclusion, must

be considered and weighed.  See Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986); Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985).  The court may not affirm the Commissioner's decision simply by isolating a specific quantum of supporting evidence.  See Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989).  If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a particular finding, the finding of the Commissioner is conclusive.  See Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987).  Therefore, where the evidence is susceptible to more than one rational interpretation, one of which supports the Commissioner's decision, the decision must be affirmed, see Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002), and may be set aside only if an improper legal standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

### III.  DISCUSSION

In his motion for summary judgment, plaintiff argues: (1) the ALJ failed to fulfill her duty to develop the record by ordering a physical consultative examination; (2) the ALJ failed to properly evaluate the impact of his obesity; (3) the ALJ failed to provide clear and convincing reasons for rejecting plaintiff's testimony as not credible; and (4) the ALJ erred by applying the Medical-Vocational Guidelines due to the existence of non-exertional limitations.

**A.     Duty to Develop the Record**

The ALJ has an independent duty to fully and fairly develop the record and assure that the claimant's interests are considered.  See Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001).  When the claimant is not represented by counsel, this duty requires the ALJ to be especially diligent in seeking all relevant facts.  See id.  This requires the ALJ to "scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts."  Cox v. Califano, 587 F.2d 988, 991 (9th Cir. 1978).  Ambiguous evidence or the ALJ's own finding that the record is inadequate triggers this duty.  See Tonapetyan, 242 F.3d at 1150.  The ALJ may

discharge the duty to develop the record by subpoenaing the claimant's physicians, submitting questions to the claimant's physicians, continuing the hearing, or keeping the record open after the hearing to allow for supplementation of the record.  See id. (citing Tidwell v. Apfel, 161 F.3d 599, 602 (9th Cir. 1998)).

Plaintiff argues that, given his obesity and related problems noted by doctors, and the lack of any physical residual functional capacity assessment by a treating, examining, or non-examining consultative source, the ALJ erred by not ordering a physical consultative examination to determine plaintiff's physical residual functional capacity.[1]  At the outset, the court observes that, contrary to plaintiff's assertion, the record contains a case evaluation analyses performed by agency consultative doctor B. Sheehy, M.D., who concluded that plaintiff's symptoms are non-severe.  Giving plaintiff the benefit of any doubts, the ALJ gave this conclusion little weight because ". . .evidence received at the hearing level shows that the claimant is more limited than determined. . . ."The ALJ also gave minimal weight to the state agency doctor's conclusion because the doctor ". . .did not adequately consider the claimant's subjective complaints."

The court does not agree with plaintiff that the ALJ was required to further develop the record in this case.  Despite the lack of opinions from treating or examining sources, the record nonetheless contained medical opinion evidence, specifically Dr. Sheehy's analysis.  Moreover, this evidence was neither inadequate or ambiguous.  Instead, it was adequate to allow the ALJ to conclude that, in light of plaintiff's subjective complaints and additional evidence not available to Dr. Sheehy, plaintiff was less functional that the doctor opined.[2]  To the extent the

---

[1] Plaintiff does not argue that the ALJ failed to develop the record regarding mental limitations.

[2] The doctor opined that plaintiff's impairments were non-severe and, therefore, had no more than a minimal impact on his ability to work.  The ALJ, however, determined that plaintiff's functional limitations were severe enough to allow for work activities up to only the medium level of exertion.

ALJ had any uncertainty, she gave the benefit of the doubt to plaintiff.

**B.    Obesity**

In 1999, obesity was removed from the Listing of Impairments.[3] Obesity may still enter into a multiple impairment analysis, but "only by dint of its impact upon the claimant's musculoskeletal, respiratory, or cardiovascular system." Celaya v. Halter, 332 F.3d 1177, 1181 n.1 (9th Cir. 2003). Thus, as part of his duty to develop the record, the ALJ is required to consider obesity in a multiple impairment analysis, but only where it is "clear from the record that [the plaintiff's] obesity . . . could exacerbate her reported illnesses." Id. at 1182; see also Burch v. Barnhart, 400 F.3d 676, 682 (9th Cir. 2005) (distinguishing Celaya and concluding that a multiple impairment analysis is not required where "the medical record is silent as to whether and how claimant's obesity might have exacerbated her condition" and "the claimant did not present any testimony or other evidence . . . that her obesity impaired her ability to work"). Where a multiple impairment analysis is not required, the ALJ properly considers obesity by acknowledging the plaintiff's weight in making determinations throughout the sequential analysis. See Burch, 400 F.3d at 684.

As to obesity, the ALJ stated:

> . . . Here, the record reflects that the claimant weights two hundred and sixty-four (264)pounds and stands five (5) feet and ten (10) inches tall; and the claimant describes symptoms attributable to his obese state. The undersigned has given due consideration to the claimant's obesity in assessing the claimant's residual functional capacity and, in this case, limiting the claimant to the performance of work at the medium exertional level.

Plaintiff argues that the ALJ "summarily opined" and that the foregoing discussion is insufficient to meet the ALJ's duty to consider plaintiff's obesity, especially given evidence of problems related to obesity. Defendant argues that plaintiff points to no objective evidence that his obesity

---

[3] Under SSR 02-01p, a person with body mass index ("BMI") of 30 or above is considered obese. BMI is the ratio of an individual's weight in kilograms to the square of height in meters (weight divided by square of height).

limits his functioning.

According to plaintiff, his treating physician specifically noted that his back pain was secondary to obesity. While one doctor noted "LBP 2nd to obesity," this does not represent evidence that plaintiff's obesity causes any limitations on his ability to work at the medium exertional level. Moreover, even though plaintiff's doctors diagnosed him with degenerative joint disease, which is a condition consistent with obesity, plaintiff does not identify any medical evidence indicating that his joint disease limits his ability to perform medium work. In fact, the available medical opinion evidence from the agency consultative examiners suggested that plaintiff's impairments no more than minimally affected his ability to work at any level of exertion. The court agrees with plaintiff that there is evidence that he has obesity-related problems. The court does not agree with plaintiff, however, that there is evidence that these problems reduce his residual functional capacity below the level determined by the ALJ. Due to this lack of evidence, the ALJ properly considered plaintiff's obesity.

### C. Credibility

The Commissioner determines whether a disability applicant is credible, and the court defers to the Commissioner's discretion if the Commissioner used the proper process and provided proper reasons. See Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1996). An explicit credibility finding must be supported by specific, cogent reasons. See Rashad v. Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990). General findings are insufficient. See Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995). Rather, the Commissioner must identify what testimony is not credible and what evidence undermines the testimony. See id. Moreover, unless there is affirmative evidence in the record of malingering, the Commissioner's reasons for rejecting testimony as not credible must be "clear and convincing." See id.; see also Carmickle v. Commissioner, 533 F.3d 1155, 1160 (9th Cir. 2008) (citing Lingenfelter v Astrue, 504 F.3d 1028, 1936 (9th Cir. 2007), and Gregor v. Barnhart, 464 F.3d 968, 972 (9th Cir. 2006)).

///

If there is objective medical evidence of an underlying impairment, the Commissioner may not discredit a claimant's testimony as to the severity of symptoms merely because they are unsupported by objective medical evidence.  See Bunnell v. Sullivan, 947 F.2d 341, 347-48 (9th Cir. 1991) (en banc).  As the Ninth Circuit explained in Smolen v. Chater:

> The claimant need not produce objective medical evidence of the [symptom] itself, or the severity thereof.  Nor must the claimant produce objective medical evidence of the causal relationship between the medically determinable impairment and the symptom.  By requiring that the medical impairment "could reasonably be expected to produce" pain or another symptom, the Cotton test requires only that the causal relationship be a reasonable inference, not a medically proven phenomenon.

80 F.3d 1273, 1282 (9th Cir. 1996) (referring to the test established in Cotton v. Bowen, 799 F.2d 1403 (9th Cir. 1986)).

The Commissioner may, however, consider the nature of the symptoms alleged, including aggravating factors, medication, treatment, and functional restrictions.  See Bunnell, 947 F.2d at 345-47.  In weighing credibility, the Commissioner may also consider: (1) the claimant's reputation for truthfulness, prior inconsistent statements, or other inconsistent testimony; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; (3) the claimant's daily activities; (4) work records; and (5) physician and third-party testimony about the nature, severity, and effect of symptoms.  See Smolen, 80 F.3d at 1284 (citations omitted).  It is also appropriate to consider whether the claimant cooperated during physical examinations or provided conflicting statements concerning drug and/or alcohol use.  See Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002).  If the claimant testifies as to symptoms greater than would normally be produced by a given impairment, the ALJ may disbelieve that testimony provided specific findings are made.  See Carmickle, 533 F.3d at 1161 (citing Swenson v. Sullivan, 876 F.2d 683, 687 (9th Cir. 1989)).

/ / /

/ / /

/ / /

Regarding reliance on a claimant's daily activities to find testimony of disabling pain not credible, the Social Security Act does not require that disability claimants be utterly incapacitated. See Fair v. Bowen, 885 F.2d 597, 602 (9th Cir. 1989). The Ninth Circuit has repeatedly held that the ". . . mere fact that a plaintiff has carried out certain daily activities . . . does not . . .[necessarily] detract from her credibility as to her overall disability." See Orn v. Astrue, 495 F.3d 625, 639 (9th Cir. 2007) (quoting Vertigan v. Heller, 260 F.3d 1044, 1050 (9th Cir. 2001)); see also Howard v. Heckler, 782 F.2d 1484, 1488 (9th Cir. 1986) (observing that a claim of pain-induced disability is not necessarily gainsaid by a capacity to engage in periodic restricted travel); Gallant v. Heckler, 753 F.2d 1450, 1453 (9th Cir. 1984) (concluding that the claimant was entitled to benefits based on constant leg and back pain despite the claimant's ability to cook meals and wash dishes); Fair, 885 F.2d at 603 (observing that "many home activities are not easily transferable to what may be the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication"). Daily activities must be such that they show that the claimant is ". . .able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting." Fair, 885 F.2d at 603. The ALJ must make specific findings in this regard before relying on daily activities to find a claimant's pain testimony not credible. See Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005).

As to plaintiff's credibility, the ALJ stated:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.
>
> The claimant has a long-standing history of mental health problems. however, the record is absent of any longitudinal history of treatment for alleged mental impairments. The majority of notes suggest a history of poly-substance dependence, including several ER visits with documented episodes of alcohol intoxication (Ex. 2F). In mid 2005, his GAF was 30. (Ex. 2F). The GAF score is a clinician's rating of an individual's overall

psychological, social, and occupational functioning, on a scale of 0 to 100. A rating of 30 indicates behavior that is considerably influenced by delusions or hallucinations or serious impairment in communication or judgment (e.g., sometimes incoherent, acts grossly inappropriately, suicidal preoccupation) or inability to function in almost all areas (e.g., stays in bed all day; no job, home, or friends). (See American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders, Fourth Edition, Text Revision pg. 34, 2000). However, his above GAF was shortly after the tragic loss of his children.

An example of the claimant's improved mental status can be found in his vastly increased GAF scores. In 2009 and 2010, his GAF scores were 50-58. (Ex. 4F and 13F). A rating of 50-58 indicates only moderate difficulty in social, occupation, or school functioning (e.g., few friends, conflicts with peers or co-workers). (See American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders, Fourth Edition, Text Revision pg. 34, 2000).

There is little evidence of a physical impairment. However, in Late 2010, views of the lumbar spine revealed a slight retrolisthesis of L3 on L4 vertebrae, which appeared to be related to degenerative disc disease (DDD). (Ex. 13F). DDD findings were also suggested at Ls-L3, L4-L5, and L5-S1. (Ex. 13F). The physicians diagnosed him with lower back pain due to obesity. (Ex. 13F).

Thus, as discussed above, the objective medical evidence does not provide a basis for finding limitations greater than those determined in this decision. In addition, consideration of the factors described in 20 C.F.R. 404.1529(c)(3) and 416.929(c)(3) and Social Security Ruling 96-7p also leads to a conclusion that the claimant's allegations of disabling symptoms and limitations cannot be accepted, and that the residual functional capacity findings in this case is justified.

Although the claimant has described limited daily activities, two factors weigh against considering these allegations to be strong evidence in favor of finding the claimant disabled. First, allegedly limited daily activities cannot be objectively verified with any reasonable degree of certainty. Secondly, even if the claimant's daily activities are truly as limited as alleged, it is difficult to attribute that degree of limitation to the claimant's medical condition, as opposed to other reasons, in view of the relatively weak medical evidence and other factors discussed in this decision. Overall, the claimant's reported limited daily activities are considered to be outweighed by the other factors discussed in this decision.

As noted, since the alleged onset of disability, the claimant has been able to attend to his personal care needs, clean his house, make his bed, vacuum, do his laundry, watch TV, read the bible, go grocery shopping, go clothes shopping, and prepare his own meals. He admitted that he routinely walks in public alone. He also admitted that he is able to count his own change and handle a savings account. He further stated that he gets along "fine" with authority figures. These activities are fully

> consistent with the residual functional capacity presented herein. He further testified that he completed eleven years of formal education, received his GED, and he can read, write, and speak English. (Ex. 4E and Hearing Testimony).
>
> While the claimant alleges his impairments substantially limit his daily activities, his course of treatment was very conservative. He never sought the treatment of a chiropractor, he never underwent invasive surgery, and he does not wear a back brace. (Ex. Hearing Testimony). Further, he does not take psychotropic medication, and has no history of hospitalization for mental health issues. Thus, the residual functional capacity (RFC) detailed above is appropriate.

Plaintiff argues that the ALJ erred by relying on lack of objective verification of plaintiff's limited daily activities and conservative course of treatment.

Even assuming that the ALJ erred by relying on these considerations, the decision reveals that the ALJ also cited <u>other</u> reasons for rejecting plaintiff's testimony. Notably, the ALJ cited the "relatively weak medical evidence." As discussed above, the court agrees with the ALJ that evidence pointing to disabling impairments is weak, if not non-existent. Rather, the available medical opinion evidence suggests even less limitation than found by the ALJ.

In addition to the weak medical evidence, the ALJ also noted plaintiff's daily activities and found them inconsistent with plaintiff's testimony. The court finds that this assessment is supported by the record. In a June 26, 2009, Function Report, plaintiff stated that he has no problems with personal care, such as bathing, dressing, and feeding himself. He also stated that he prepares his own meals, and that his cooking habits have not changed since the alleged onset date. Plaintiff stated that he does his own housework and yardwork, and that he does his own laundry. Plaintiff added that he gets around on his own by walking and using public transit, and that he does his own shopping. Plaintiff did not note any difficulty lifting, squatting, bending, standing, reaching, walking, sitting, kneeling, talking, hearing, climbing, seeing, completing tasks, following instructions, or getting along with others.

///

///

Turning to plaintiff's course of treatment, the court finds no error in this regard. As the ALJ noted, plaintiff's treatment has in deed been conservative. Plaintiff has not sought aggressive pain management care consistent with disabling levels of pain. Nor does plaintiff take any medication related to mental health impairments. Plaintiff has never had surgery or been hospitalized for his complaints.

### D.   Application of the Medical-Vocational Guidelines

The Medical-Vocational Guidelines ("Grids") provide a uniform conclusion about disability for various combinations of age, education, previous work experience, and residual functional capacity. The Grids allow the Commissioner to streamline the administrative process and encourage uniform treatment of claims based on the number of jobs in the national economy for any given category of residual functioning capacity. See Heckler v. Campbell, 461 U.S. 458, 460-62 (1983) (discussing creation and purpose of the Grids).

The Commissioner may apply the Grids in lieu of taking the testimony of a vocational expert only when the Grids accurately and completely describe the claimant's abilities and limitations. See Jones v. Heckler, 760 F.2d 993, 998 (9th Cir. 1985); see also Heckler v. Campbell, 461 U.S. 458, 462 n.5 (1983). Thus, the Commissioner generally may not rely on the Grids if a claimant suffers from non-exertional limitations because the Grids are based on exertional strength factors only.[4] See 20 C.F.R., Part 404, Subpart P, Appendix 2, § 200.00(b).

---

[4]   Exertional capabilities are the primary strength activities of sitting, standing, walking, lifting, carrying, pushing, or pulling and are generally defined in terms of ability to perform sedentary, light, medium, heavy, or very heavy work. See 20 C.F.R., Part 404, Subpart P, Appendix 2, § 200.00(a). "Sedentary work" involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. See 20 C.F.R. §§ 404.1567(a) and 416.967(a). "Light work" involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. See 20 C.F.R. §§ 404.1567(b) and 416.967(b). "Medium work" involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. See 20 C.F.R. §§ 404.1567(c) and 416.967(c). "Heavy work" involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds. See 20 C.F.R. §§ 404.1567(d) and 416.967(d). "Very heavy work" involves lifting objects weighing more than 100 pounds at a time with frequent lifting or carrying of objects weighing 50 pounds or more.

1  "If a claimant has an impairment that limits his or her ability to work without directly affecting
2  his or her strength, the claimant is said to have non-exertional . . . limitations that are not covered
3  by the Grids." Penny v. Sullivan, 2 F.3d 953, 958 (9th Cir. 1993) (citing 20 C.F.R., Part 404,
4  Subpart P, Appendix 2, § 200.00(d), (e)).  The Commissioner may, however, rely on the Grids
5  even when a claimant has combined exertional and non-exertional limitations, if non-exertional
6  limitations do not impact the claimant's exertional capabilities.  See Bates v. Sullivan, 894 F.2d
7  1059, 1063 (9th Cir. 1990); Polny v. Bowen, 864 F.2d 661, 663-64 (9th Cir. 1988).

8  As to the Grids, the ALJ stated: "Based on a residual functional capacity for the
9  full range of medium work, considering the claimant's age, education, and work experience, a
10 finding of "not disabled" is directed by Medical-Vocational Rule 203.22."  Plaintiff argues that
11 the ALJ erred in applying this rule because the ALJ's residual functional capacity finding failed
12 to account for non-exertional limitations such as: (1) moderate deficiencies in concentration,
13 persistence, or pace; (2) pain; (3) inability to handle stress and changes in routine; (4) impaired
14 ability to leave his room; and (5) impaired ability to interact appropriately with co-workers and
15 the public.  According to plaintiff, this case requires a remand for consideration of vocational
16 expert testimony.

17 The court finds no error.  As discussed above, the record does not contain
18 evidence that non-exertional limitations limit plaintiff's exertional capabilities.
19 / / /
20 / / /
21 / / /
22 / / /
23 / / /

---

See 20 C.F.R. §§ 404.1567(e) and 416.967(e).
Non-exertional activities include mental, sensory, postural, manipulative, and environmental matters which do not directly affect the primary strength activities.  See 20 C.F.R., Part 404, Subpart P, Appendix 2, § 200.00(e).

…

## IV.  CONCLUSION

Based on the foregoing, the court concludes that the Commissioner's final decision is based on substantial evidence and proper legal analysis.  Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (Doc. 20) is denied;
2. Defendant's cross-motion for summary judgment (Doc. 21) is granted; and
3. The Clerk of the Court is directed to enter judgment and close this file.

DATED: March 29, 2013

*Craig M. Kellison*
**CRAIG M. KELLISON**
UNITED STATES MAGISTRATE JUDGE